1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11   LINDA SHORTER,                          No.  2:10-cv-02232-MCE-GGH

12            Plaintiff,

13        v.                                 **MEMORANDUM AND ORDER**

14   PEACHES UNIFORMS, INC, and
     DOES 1-25,
15
              Defendants.
16

17

18                            ----oo0oo----

19        Plaintiff Linda Shorter ("Plaintiff" or "Shorter") brought this action against her

20   former employer Peaches Uniforms, Inc. ("Defendant" or "Peaches") seeking to recover

21   monetary damages allegedly arising out of Plaintiff's wrongful termination by Peaches.

22   Presently before the Court is Defendant's Motion for Summary Judgment, filed on

23   September 13, 2012.  (ECF No. 42.)  For the reasons that follow, Defendant's Motion is

24   GRANTED.[1]

25   ///

26

27   _____

          [1] Because oral argument would not be of material assistance, the Court ordered this matter

28   submitted on the briefing.  E.D. Cal. R. 230(g).

                                        1

1

BACKGROUND[2]

2

A.    Factual Background

3

4       The undisputed facts are as follows.  In 1987, Plaintiff began working for Peaches,

5   a Texas corporation, in Dallas, Texas.  Subsequently, Peaches allowed Plaintiff to move

6   to Illinois (in 1995), then to Iowa (in 2001), and finally to California (in 2007) and work

7   remotely from those locations.  Plaintiff's moves were for personal reasons and were not

8   related to her employment.

9       In 2004, Barry Rothschild ("Rothschild"), the owner and president of Peaches,

10  asked Plaintiff to sign an acknowledgement in the employee handbook that Plaintiff's

11  employment was "at-will."  Shorter confronted Rothschild, stating that she should be

12  terminable only for cause because she had worked for Peaches for a long time.

13  Rothschild refused to change the "at-will" acknowledgement in the handbook, but

14  allegedly stated that Plaintiff "would not have to worry about it."  (ECF No. 56-1 ¶ 9.)

15  After that, Plaintiff signed the "at-will" acknowledgement.

16      When Plaintiff moved to California in August 2007, she asked Peaches to provide

17  an employment verification letter to her mortgage company.  On August 17, 2007,

18  Peaches provided a letter to Plaintiff's lender, which stated in its entirety: "Linda Shorter

19  will continue her employment with Peaches Uniforms, Inc. at the same position and pay

20  when she moves to California."  (ECF No. 42-4.)

21      On May 29, 2008, Rothschild contacted Plaintiff at her home in California and fired

22  her.  According to Peaches, the reason for the termination was Plaintiff's participation in a

23  series of hateful and unpleasant emails to other employees.  However, Plaintiff alleges

24  that Peaches did not have a good cause to terminate her employment because Plaintiff

25  had not sent any unpleasant emails, but simply responded, in a professional manner, to

26  another person's hateful email message.

27

[2] Unless otherwise stated, the following facts are derived from Defendant's Statement of
Undisputed Facts (ECF No. 43) and Plaintiff's Response to Defendant's Statement of Undisputed Facts
(ECF No. 56-1).

28

1    In support of her intentional misrepresentation and defamation causes of action,

2   Plaintiff pleads that Peaches' President, Mr. Rothschild published the following false

3   statements about Plaintiff "to persons within the industry, including employees of

4   competitors and vendors": (1) Plaintiff became a partner at Peaches; (2) Plaintiff signed a

5   non-compete agreement preventing Plaintiff from working for any of Peaches'

6   competitors; and (3) Plaintiff was responsible for Peaches' decline in business and

7   revenue.  (ECF No. 1-1 ¶¶ 43, 50-55.)  In her response to Defendant's Interrogatory

8   No. 6[3], Plaintiff identified the fourth defamatory statement published by Peaches.  (ECF

9   No. 42-3, at 9-10.) In particular, according to Plaintiff, someone at Peaches told Plaintiff's

10  prospective employers that Plaintiff did not get along with her fellow employees.  (Id.)

11

12      **B.    Procedural History**

13

14    On May 28, 2010, Plaintiff filed her lawsuit in the Superior Court of the State of

15  California, San Joaquin County, alleging the following state-law causes of action:

16  (1) Breach of Contract; (2) Breach of Implied Covenant of Good Faith and Fair Dealing;

17  (3) Detrimental Reliance; (4) Wrongful Termination in Violation of Public Policy;

18  (5) Intentional Misrepresentation under California Labor Code § 1050; (6) Defamation;

19  and (7) Slander Per Se.  (Compl., ECF No. 1, Ex. C.)  On August 19, 2010, Defendant

20  removed the action to this Court on the basis of diversity jurisdiction.  (ECF No. 1.)

21  Subsequently, Defendant filed a motion to dismiss the case for lack of personal

22  jurisdiction or for improper venue, which the Court denied by its November 8, 2012,

23  Order.  (ECF Nos. 4, 17.)  In September 2012, the Court granted Defendant's Motion to

24  Apply Texas Law to all of Plaintiff's claims except detrimental reliance (third cause of

25  action), defamation (sixth cause of action), and slander per se (seventh cause of action).

26  (ECF Nos. 30, 40.)

27  _____

28    [3] Defendant's Interrogatory No. 6 asked Plaintiff to identify all disparaging or defamatory
statements made by Peaches.  (ECF No. 42-3, at 9.)

1   On October 4, 2012, after the deadline to complete discovery had passed, Plaintiff

2   filed a Motion to Modify the Pretrial Scheduling Order ("PTSO") ,seeking to extend

3   discovery deadlines to depose additional witnesses.  (ECF No. 52.)  By its November 6,

4   2012 Order, the Court denied Plaintiff's motion after finding that Plaintiff had failed to

5   demonstrate good cause for the requested PTSO modification.  (ECF No. 57.)

6

7                                **LEGAL STANDARD**

8

9   Summary judgment is appropriate when it is demonstrated that there exists no

10  genuine issue as to any material fact, and that the moving party is entitled to judgment as

11  a matter of law.  Fed. R. Civ. P. 56(a); Karuk Tribe of Cal. v. U.S. Forest Serv., 681 F.3d

12  1006, 1017 (9th Cir. 2012). Summary judgment should be entered "against a party who

13  fails to make a showing sufficient to establish the existence of an element essential to

14  that party's case, and on which that party will bear the burden of proof at trial."  Celotex

15  Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[W]here the nonmoving party will bear the

16  burden of proof at trial on a dispositive issue, a summary judgment motion may properly

17  be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and

18  admissions on file.'"  Id. at 324.

19  The Supreme Court explained:

20           [T]he party seeking summary judgment always bears the initial
             responsibility of informing the district court of the basis of its
21           motion, and identifying those portions of "the pleadings,
             depositions, answers to interrogatories, and admissions on file
22           together with the affidavits, if any," which it believes
             demonstrate the absence of a genuine issue of material fact.
23

24  Id. at 323.  In attempting to establish the existence of a factual dispute, the opposing

25  party must tender evidence of specific facts in the form of affidavits, and/or admissible

26  discovery material, in support of its contention that the dispute exists.  Fed. R. Civ. P.

27  56(e).

28  ///

                                        4

1   The opposing party must demonstrate that the fact in contention is material, i.e., a fact

2   that might affect the outcome of the suit under the governing law, and that the dispute is

3   genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the

4   nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251-52 (1986);

5   Owens v. Local No. 169, Assoc. of W. Pulp and Paper Workers, 971 F.2d 347, 355 (9th

6   Cir. 1987).  Stated another way, "before the evidence is left to the jury, there is a

7   preliminary question for the judge, not whether there is literally no evidence, but whether

8   there is any upon which a jury could properly proceed to find a verdict for the party

9   producing it, upon whom the onus of proof is imposed."  Anderson, 477 U.S. at 251

10  (quoting Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)).  As the Supreme Court

11  explained, [w]hen the moving party has carried its burden under Rule 56(c), its opponent

12  must do more than simply show that there is some metaphysical doubt as to the material

13  facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find

14  for the nonmoving party, there is no "genuine issue for trial."  Matsushita Elec. Indus. Co.,

15  Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (internal citations omitted).

16          In resolving a summary judgment motion, the evidence of the opposing party is to

17  be believed, and all reasonable inferences that may be drawn from the facts placed

18  before the court must be drawn in favor of the opposing party. Anderson, 477 U.S. at 255.

19  However, "inferences are not drawn out of the air, and it is the opposing party's obligation

20  to produce a factual predicate from which the inference may be drawn."  County of Inyo v.

21  Dep't of Interior, 873 F. Supp. 2d 1232, 1239 (E.D. Cal. 2012).

22

23                                            **ANALYSIS**

24  **A.     First Cause of Action: Breach of Contract**

25

26          In her Complaint, Plaintiff alleges that she had a "partly oral, partly written, and

27  partly implied-in-fact" contract that prohibited Peaches from terminating Plaintiff's

28  employment except for good cause.  (Compl. ¶ 19.)

1    According to Plaintiff, Peaches breached the contract by terminating Plaintiff's

2    employment without cause, discharging Plaintiff in bad faith, not complying with the

3    policies and practices of Peaches or the employment agreement with Plaintiff, and failing

4    and refusing to adhere to its own policies and practices in its treatment of Plaintiff.  (Id.

5    ¶ 21.)  In its motion for summary judgment, Defendant contends that Plaintiff has

6    provided no evidence that the parties entered into a contract for a specific term of

7    employment or a contract not to terminate except for good cause.  (ECF No. 42, at 3-4.)

8       The parties do not dispute that, prior to 2004, Plaintiff's employment with Peaches

9    was at-will.  However, Plaintiff argues that the at-will nature of her employment was

10    modified when Rothschild "assured her that the at-will policy would not apply to her."

11    (Pl.'s Opp's to Def.'s Mot. for Summary Judgment, ECF No. 56, at 8.)  Thus, Plaintiff

12    asserts Rothschild's assurances, coupled with the fact that Plaintiff had been employed

13    by Peaches for more than twenty years, created an "implied contract" prohibiting Peaches

14    from terminating Plaintiff without good cause.  (Id.)

15       As the Court ruled in its September 6, 2012, Order, Plaintiff's employment

16    relationship with Peaches is governed by the laws of the State of Texas.  (ECF No. 40.)

17    Under Texas law, employment is presumed to be "at will" unless modified by the parties'

18    agreement.  See Montgomery County Hosp. Dist. v. Brown, 965 S.W.2d 501, 502 (Tex.

19    1998) ("For well over a century, the general rule in this State . . . has been that absent a

20    specific agreement to the contrary, employment may be terminated by the employer or

21    the employee for good cause, bad cause, or no cause at all."); Midland Judicial Dist.

22    Cmty. Supervision & Corr. Dep't v. Jones, 92 S.W. 3d 486, 487 (Tex. 2002)

23    ("[E]mployment is presumed to be at-will in Texas.").

24       Under Texas law, "[a]ny modification of an employee's at-will employment status

25    must be based on expressed, rather than implied, agreements that are clear and

26    specific."  Brown v. Sabre, Inc., 173 S.W.3d 581, 585 (Tex. App. 2005) (emphasis

27    added); see also El Expreso, Inc. v. Zendejas, 193 S.W.3d 590, 594 (Tex. App. 2006)

28    ///

1  ("[A]n agreement to modify the at-will employment relationship must be '(1) expressed,

2  rather than implied, and (2) clear and specific.'").  Although an at-will employment

3  contract may be modified by the parties' oral agreement, "the employer must

4  unequivocally indicate a definite intent to be bound to not terminate the employee except

5  in clearly specified circumstances."  Welch v. Doss Aviation, Inc., 978 S.W.2d 215,

6  220-21 (Tex. App. 1998) (emphasis added).  As one Texas appellate court explained:

> General comments that an employee will not be discharged so
> long as his work is satisfactory, or that he will be terminated
> only for 'good reason' or 'good cause' without agreement on
> what those terms encompass, do not manifest such intent.
> These types of comments are simply not definite enough to
> constitute an enforceable contract.

11  Id. (internal citation omitted); see also El Expreso, Inc., 193 S.W.3d at 594 ("General,

12  indefinite statements will not serve to limit an employer's right to discharge an

13  employee."); Runge v. Raytheon E-Systems, Inc., 57 S.W.3d 562, 565-66 (Tex. App.

14  2001) ("General comments will not suffice; an employee must reveal a more formal

15  agreement with the employer to modify at-will employment.").

16      The decision of the Texas Supreme Court in Montgomery County Hospital

17  District v. Brown, 965 S.W.2d 501 (Tex. 1998), is particularly instructive.

18  In that case, the plaintiff argued that her at-will employment contract had been modified

19  by the employer telling Plaintiff that she would not be fired "as long as [she] was doing

20  [her] job and . . . unless there was a good reason or good cause to fire [her]."

21  Montgomery County Hosp. Dist., 965 S.W.2d at 502.  The Texas Supreme Court

22  disagreed and concluded that these statements were too vague to overcome the

23  presumption of employment at-will.  Id.  As the court emphasized, "[a]n employee who

24  has no formal agreement with his employer cannot construct one out of indefinite

25  comments, encouragements, or assurances."  Id.

26  ///

27  ///

28  ///

1     To prove that she could not be terminated by Peaches except for good cause,

2  Plaintiff relies on the following conversation with Rothschild which took place when

3  Rothschild asked Plaintiff to sign the at-will acknowledgement in the employee handbook:

> I asked that in my situation, I felt that there should be a just
> cause for terminating me since I had been there over ten
> years.  And he just – he said, "Don't worry about it.  You never
> have to worry about that.

7  (Shorter Dep. 73:24-74:3.)  Plaintiff further testified that Rothschild promised to "take

8  care" of her.  (Shorter Dep. 241:6-13.)

9     Rothschild's statements, which Plaintiff relies on in support of her breach of

10  contract claim, are neither clear nor specific enough to change the at-will nature of

11  Plaintiff's employment at Peaches.  See Runge, 57 S.W.3d at 565-66 (finding that

12  employer's promise that an employee will have "a job for life" was "not specific enough to

13  alter the employment-at-will relationship.");  Garcia v. Dairy Queens of West Texas, 1998

14  WL 479755, at * 2-3 (Tex. App. Aug. 17, 1998) (concluding that employer's promise to

15  "take care" of its employee "do[es] not specify the parameters of the obligation" and thus

16  is not sufficiently definite to support an enforceable agreement).  Rothschild's statements,

17  even if made to Plaintiff, are examples of "indefinite comments, encouragements, or

18  assurances" that Texas courts have repeatedly found to be insufficient to modify

19  Plaintiff's employment contract.  See Montgomery County Hosp. Dist., 965 S.W.2d at

20  502.  Plaintiff has failed to provide any evidence of an "expressed" agreement with

21  Peaches that modified the at-will nature of her employment.  See Brown, 173 S.W.3d at

22  585.

23     Plaintiff attempts to find support in Goodyear Tire & Rubber Co. v. Portilla

24  ("Goodyear"), 879 S.W.2d 47 (Tex. 1994), where, according to Plaintiff, an employer's

25  express waiver of enforcement of a policy for a particular employee modified the

26  employment at-will relationship with respect to that policy.  (ECF No. 56, at 7.)  However,

27  Goodyear is clearly distinguishable from the instant case.

28  ///

1  In Goodyear, the employer had an anti-nepotism policy which prohibited the store

2  managerial employee from overseeing a family member.  879 S.W.2d at 48.  However, in

3  direct violation of the anti-nepotism policy, the plaintiff had been working under her

4  brother's direct supervision for seventeen years.  Id. at 49.  During all those years, the

5  employer had failed to enforce the policy with respect to the plaintiff even though it knew

6  about the violation.  Id.  The plaintiff argued, and the jury agreed, that the employer had

7  expressly modified its employment-at-will relationship with her "by waiving enforcement of

8  the anti-nepotism policy against her."  Id. at 49-50.  The appellate court affirmed the

9  verdict concluding that there was sufficient evidence of an express waiver of the policy,

10  including the employer's failure to terminate the plaintiff for seventeen years despite

11  knowledge of the violation, a specific written request for a waiver by the plaintiff's brother

12  who was the plaintiff's supervisor, and testimony of the plaintiff's brother and other

13  witnesses that such a waiver was granted.  Id. at 50-51.  Thus, although the plaintiff in

14  Goodyear was unable to present a written waiver of the anti-nepotism policy at trial, she

15  produced sufficient evidence demonstrating that such a waiver was in fact granted to her.

16  Id. at 51 n. 8.  In contrast, in the present case, Plaintiff has failed to produce any evidence

17  demonstrating that Peaches waived or modified the at-will employment policy's

18  application to Plaintiff.

19  Therefore, the Court concludes that Plaintiff's employment by Peaches was at-will,

20  and thus Peaches could fire Plaintiff "for good cause, bad cause, or no cause at all."  See

21  Montgomery County Hosp. Dist., 965 S.W.2d at 502.  Accordingly, summary judgment for

22  Defendant is appropriate on Plaintiff's breach of contract cause of action.

23

24  **B.  Second Cause of Action: Implied Covenant of Good Faith and Fair
      Dealing**

25

26  In her Complaint, Plaintiff alleges that Peaches breached an implied covenant of

27  good faith and fair dealing when it terminated her without cause.  (Compl. ¶¶ 24-26.)

28  ///

9

However, Texas law does not recognize a general duty of good faith and fair dealing owed by an employer to an employee.  See Federal Express Corp. v. Dutschmann, 846 S.W. 2d 282, 284 n.1 (Tex. 1993) (per curiam) ("We have declined to recognize a general duty of good faith and fair dealing in the employer-employee relationship."); City of Midland v. O'Bryant, 18 S.W.3d 209, 216 (Tex. 2000) ("[W]e decline to impose a duty of good faith and fair dealing on employers in light of the variety of statutes that the Legislature has already enacted to regulate employment relationships."); Beverick v. Koch Power, Inc., 186 S.W.3d 145, 153 (Tex. App. 2005) ("Texas does not recognize a fiduciary duty or a duty of good faith and fair dealing owed by an employer to an employee.").  Therefore, Plaintiff's second claim for relief fails as a matter of law and summary judgment for Defendant is proper on this claim.

## C.    Third Cause of Action: Detrimental Reliance

Plaintiff claims that, in reliance on Peaches' promises of continued employment and on the employment verification letter provided by Peaches to Plaintiff's mortgage company, she moved to California and bought a more expensive house than she would have bought otherwise. (Compl. ¶¶ 29-33; ECF No. 56, at 10-11.)  The parties agree that California law applies to Plaintiff's detrimental reliance cause of action.  (See ECF No. 42, at 7; ECF No. 56, at 9.)  There is no separate cause of action for "detrimental reliance" in California.  Plaintiff's claim here is essentially one for promissory estoppel.  See Signal Hill Aviation Co. v. Stroppe, 96 Cal. App. 3d 627, 640 (1979) (explaining that, under the doctrine of promissory estoppel, "the promisee's justifiable and detrimental reliance on the promise is regarded as a substitute for the consideration required as an element of an enforceable contract.").

///

///

///

1    Pursuant to the doctrine of promissory estoppel, "[a] promise which the promisor

2    should reasonably expect to induce action or forbearance on the part of the promisee or a

3    third person and which does induce such action or forbearance is binding if injustice can

4    be avoided only by enforcement of the promise." Kajima/Ray Wilson v. Los Angeles

5    County Metro. Transp. Auth., 23 Cal.4th 305, 310 (2000). "Estoppel is not favored by the

6    courts, and it is incumbent upon one who advances it to prove its dominant essentials,

7    leaving nothing to surmise or questionable inference." Landberg v. Landberg, 24 Cal.

8    App. 3d 742, 758-59 (1972). The elements of promissory estoppel under California law

9    are: "(1) a clear promise, (2) reliance, (3) substantial detriment, and (4) damages

10   measured by the extent of the obligation assumed and not preformed." Toscano v.

11   Greene Music, 124 Cal. App. 4th 685, 692 (2004) (internal citation and quotation marks

12   omitted). The Court need not address all of the elements of promissory estoppel

13   because it concludes that Plaintiff has failed to provide evidence of any "clear promise"

14   made to her by Defendant.

15   "[A] promise is an indispensable element of the doctrine of promissory estoppel."

16   Div. of Labor Law Enforcement v. Transpacific Transp. Co., 69 Cal. App. 3d 268, 277

17   (1977). Accordingly, this doctrine does not apply "in the absence of a showing that a

18   promise had been made upon which the complaining party relied to his prejudice." Id. To

19   be enforceable, the promise must be "clear and unambiguous in its terms." Laks v. Coast

20   Fed. Savings & Loan Ass'n, 60 Cal. App. 3d 885, 890 (1976). Moreover, a promise must

21   be "definite enough that a court can determine the scope of the duty, and the limits of

22   performance must be sufficiently defined to provide a rational basis for the assessment of

23   damages." Garcia v. World Sav., FSB, 183 Cal. App. 4th 1031, 1045 (2010) (internal

24   citations and quotation marks omitted). "[A] promise that is vague, general or of

25   indeterminate application is not enforceable" under the doctrine of promissory estoppel.

26   Aguilar v. Int'l Longshoremen's Union Local No. 10, 966 F.2d 443, 446 (9th Cir. 1992).

27   ///

28   ///

1    In support of her promissory estoppel claim, Plaintiff relies on the following
2    "promises" made to her by Peaches: (1) Rothschild's promises to take care of Plaintiff
3    and that the at-will acknowledgement in the employee handbook would not apply to her;
4    (2) the employment verification letter that Peaches sent to Plaintiff's mortgage company;
5    and (3) Rothschild's assurance that Plaintiff's salary would remain the same after Plaintiff
6    moved to California.  (ECF No. 56, at 10.)  According to Plaintiff, in making these
7    promises, Defendant "should reasonably have expected to induce action or forbearance
8    on the part of Plaintiff."  (Id.)

9    As analyzed above, Rothschild's alleged statements promising to take care of
10   Plaintiff and assuring Plaintiff that she need not "worry" about the at-will
11   acknowledgement in the employee handbook do not constitute a "promise" of any sort, let
12   alone a "clear" promise not to terminate Plaintiff.  Similarly, the Court cannot construe
13   Rothschild's statement that Plaintiff's salary will remain the same upon her move to
14   California as a guarantee of Plaintiff's continued employment at Peaches or a promise
15   not to terminate Plaintiff without cause.  Finally, Defendant's letter to Plaintiff's mortgage
16   company also falls short of establishing any "promise" that would give rise to Plaintiff's
17   instant promissory estoppel claim.  The employment verification letter simply stated that
18   Plaintiff would "continue her employment with Peaches Uniforms, Inc. at the same
19   position and pay when she moves to California."  (ECF No. 42-4.)  The letter contained
20   no promises that Peaches would not terminate Plaintiff except for cause and did not
21   guarantee that Plaintiff would keep her job for any extended period of time.  Plaintiff
22   herself admits that the employment verification letter did not create a right of employment
23   for life.  (Shorter Dep. 173:20-174:13.)

24   Therefore, the Court finds that Plaintiff has failed to present any evidence of
25   Peaches' "clear promise" that would justify applying the doctrine of promissory estoppel in
26   this case.  Thus, Plaintiff's fourth claim for relief fails as a matter of law.
27   ///
28   ///

**D.    Fourth Cause of Action: Wrongful Termination in Violation of Public Policy**

In her Complaint, Plaintiff alleges that, by terminating Plaintiff, Peaches violated "public policy of the State of California as set forth in, inter alia, Government Code §§ 12920, 12921, 12926, 12940, 12941[,] which prohibit discrimination in employment on the basis of gender and age and as guaranteed by the Constitution of California."  (ECF No. 1-1 ¶ 36.)  Plaintiff's claim here is based on the decision of the California Supreme Court in Tameny v. Atlantic Richfield Co., which recognized "the propriety of a tort remedy when an employer's discharge of an employee contravenes the dictates of public policy."  27 Cal.3d 167, 177 (1980).  Under the Tameny exception, "an employer's traditional broad authority to discharge an at-will employee 'may be limited by statute or by consideration of public policy.'"  Id. at 172 (internal citations omitted).

The main problem with Plaintiff's arguments in support of her wrongful termination claim is that Plaintiff's employment relationship with Peaches, including the propriety of her termination, is governed not by the laws of California, but by laws of Texas.  (See ECF No. 40.)  As this Court explained in its September 6, 2012 Order, Texas law does not have a broad public policy exception to at-will employment similar to the Tameny exception under California law.  (ECF No. 40, at 7.)  As analyzed above, the rule in Texas is that, absent a specific agreement to the contrary, employment may be terminated by the employer or the employee at will "for good cause, bad cause, or no cause at all."  See Montgomery County Hosp. Dist., 965 S.W.2d at 502.  The only provision of Texas law loosely similar to the rule established in Tameny is a "very narrow" exception to the employment-at-will doctrine allowing a discharged employee to sue for wrongful termination if fired "for the sole reason that the employee refused to perform an illegal act."

///

///

///

13

1  Sabine Pilot Serv., Inc. v. Hauck, 687 S.W.2d 733, 735 (1985); see also City of Midland v,

2  18 S.W.3d at 215 (stating that the exception recognized by the Supreme Court of Texas

3  in Sabine Pilot is the only common-law exception to the at-will employment doctrine

4  under Texas law); Martin v. Clinical Pathology Labs., Inc., 343 S.W.3d 885, 892 (Tex.

5  App. 2011) ("In Sabine Pilot, the Texas Supreme Court adopted the lone common-law

6  exception to the at-will doctrine because it determined that public policy required it.").

7        Because Plaintiff does not claim that Peaches terminated her for refusing to

8  engage in criminal activity, she cannot state a viable claim for wrongful termination in

9  violation of public policy under Texas law.  Therefore, summary judgment for Defendant

10  is proper on Plaintiff's fourth cause of action.

11

12        **E.**      **Fifth Cause of Action: Intentional Misrepresentation**

13

14        Plaintiff's intentional misrepresentation claim is based on California Labor Code

15  §§ 1050, 1054 which allow a former employee to sue a former employer who prevents or

16  attempts to prevent the employee from obtaining future employment by making

17  misrepresentations about such employee.[4]  The Court is not aware of a similar statutory

18  provision under Texas law, and Plaintiff has not provided any such authority.[5]

19  Accordingly, the Court grants summary judgment for Defendant on Plaintiff's sixth cause

20  of action.

21  ///

22  ///

23  ///

24        [4] Cal. Labor Code § 1050 provides: "Any person, or agent or officer thereof, who, after having

25  discharged an employee from the service of such person or after an employee has voluntarily left such
service, by any misrepresentation prevents or attempts to prevent the former employee from obtaining
employment, is guilty of misdemeanor." Cal. Labor Code § 1054 allows an aggrieved party to bring a civil

26  action for treble damages for a violation of § 1050.

27        [5] In fact, Plaintiff has not even addressed the intentional misrepresentation claim in her opposition
to Defendant's motion for summary judgment.

28

1

2

**F.      Sixth and Seventh Causes of Action: Defamation and Slander Per Se**[6]

3

As alleged in Plaintiff's Complaint, "Peaches' President intentionally made false

4
and disparaging statements about [Plaintiff] to competitors, vendors and persons within

5
the industry at business meetings and trade conferences."  (ECF No. 1-1 ¶¶ 50, 61.)

6
Plaintiff claims that those statements constituted "defamation per se" and "slander per se"

7
because they affected Plaintiff's profession and business reputation.  (Id. ¶¶ 51, 62.)

8
"Defamation is an invasion of the interest in reputation."  Ringler Assocs. Inc. v.

9
Maryland Cas. Co., 80 Cal. App. 4th 1165, 1179 (2000).  Under California law,

10
defamation is a publication that is false, defamatory and unprivileged, and that has a

11
natural tendency to injure or that causes special damages.  Lee Myles Assocs. Corp. v.

12
Paul Rubke Enters., Inc., 557 F. Supp.2d 1134, 1139 (S.D. Cal. 2008).  "The question

13
whether a statement is reasonably susceptible to a defamatory interpretation is a

14
question of law for the trial court."  Smith v. Maldonado, 72 Cal. App. 4th 637, 647 (1999).

15
California Civil Code § 44 recognizes two types of defamation: libel and slander.

16
Libel is defined as "a false and unprivileged publication by writing, printing, picture, effigy,

17
or other fixed representation to the eye, which exposes any person to hatred, contempt,

18
ridicule, or obloquy, or which causes him to be shunned or avoided, or which causes a

19
tendency to injure him in his occupation."  Cal. Civil Code § 45.  Oral defamatory

20
statements to third persons constitute slander.  Mann v. Quality Old Time Serv., Inc.,

21
120 Cal. App. 4th 90, 106 (2004).  Pursuant to California Civil Code § 46, to be

22
actionable, slander requires proof of "actual damages" unless a published statement is

23
deemed slander per se which is actionable without special damages.  Id. at 106-07.

24
Under California law, slander per se includes, inter alia,

25
///

26
///

27

28
      [6] The parties do not dispute that California law governs Plaintiff's defamation and slander per se claims.  (See ECF No.42, at 9; ECF No. 11-12.)

1         false and unprivileged publication, orally uttered, . . . which . . .
       tends directly to injure [a person] in respect to his office,
2         profession, trade or business, either by imputing to him
       general disqualification in those respects which the office or
3         other occupation peculiarly requires, or by imputing something
       with reference to his office, profession, trade, or business that
4         has a natural tendency to lessen its profits. [7]

5       In her response to Defendant's Interrogatory No. 6, Plaintiff identified the following

6  defamatory statements allegedly made by "Defendant's agent, employee, or supervisor"

7  Barry Rothschild: (1) Shorter was a partner at Peaches; (2) Shorter signed a non-

8  compete agreement when she was drunk; (3) Shorter was the cause of the company's

9  loss of revenue; and (4) Shorter could not get along with her fellow employees.  (See

10  ECF No. 42-3, at 9.)  The Court will analyze each statement separately.

11

12         **1.**      **Rothschild's Statement that Plaintiff was a Partner at Peaches**

13

14       According to Plaintiff's deposition testimony, at the PAA show in New Orleans, a

15  former employee of Peaches, Jim Case, approached Plaintiff and said, "Congratulations,

16  I hear you are now a partner."  (Shorter Dep. 103:18-23.)  After Plaintiff requested

17  explanations about the source of this false information, Mr. Case stated that he "was told

18  that [Plaintiff was] made a partner," and that "[i]t's out in the industry."  (Id. 105:17-23.)

19       The principal problem with Plaintiff's arguments in support of her defamation and

20  slander per se claims arising out of the "partner" statement is that Plaintiff has failed to

21  provide any admissible evidence that the statement was in fact made by Rothschild, or to

22  demonstrate that she would be able to produce such admissible evidence at trial.

23  Pursuant to Federal Rule of Civil Procedure 56(c),

24  ///

25  ///

26  _____

27       [7] The other three categories constituting slander per se under Cal. Civil Code § 46 are statements
that: (1) "Charge[] any person with crime, or with having been indicted, convicted, or punished for crime; (2)
28  "Impute[] in him the present existence of an infectious, contagious, or loathsome disease"; (3) "Impute[] to
him impotence or a want of chastity."

> A party asserting that a fact cannot be or is genuinely disputed
> must support the assertion by:
>
> (A) citing to particular parts of materials in the record,
> including depositions, documents, electronically stored
> information, affidavits or declarations, stipulations (including
> those made for purposes of the motion only), admissions,
> interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the
> absence or presence of a genuine dispute, or that an adverse
> party cannot produce admissible evidence to support the fact.
>
> . . .
>
> [The opposing] party then "may object that the material cited
> to support or dispute a fact cannot be presented in a form that
> would be admissible in evidence.
>
> . . .
>
> An affidavit or declaration used to support or oppose a motion
> must be made on personal knowledge, set out facts that
> would be admissible in evidence, and show that the affiant or
> declarant is competent to testify on the matters stated.

As Plaintiff conceded during her deposition testimony, she had not heard Rothschild or any other Peaches' representative make the statement about Plaintiff becoming a partner at Peaches.  (Shorter Dep. 106:4-107:2.)  Plaintiff's personal knowledge here is limited to her conversation with Mr. Case about someone in the "industry" saying that Plaintiff had become a partner at Peaches.  As the Ninth Circuit explained, a deposition testimony is "insufficient to create a genuine issue of fact [where] it was not made on plaintiff's personal knowledge, did not set forth facts which would have been admissible in evidence, and did not show affirmatively that plaintiff is competent to testify to the matters stated therein."  Urbina v. Gilfilen, 411 F.2d 546, 547-48 (9th Cir. 1969).  There are numerous court opinions from this circuit stating that a summary judgment for defendant is proper on a defamation claim where the plaintiff cannot provide any admissible evidence demonstrating that the statements were actually made.  See, e.g., Courtney v. Canyon Television & Appliance Rental Inc., 899 F.2d 845, 851 (9th Cir. 1990); Flores v. Von Kleist, 739 F. Supp. 2d 1236, 1258-59 (E.D. Cal. 2010);

1   Walker v. Boeing Corp., 218 F. Supp. 2d 1177, 1191-93 (C.D. Cal. 2002).  Because

2   Plaintiff can point to nothing beyond her own inadequate deposition testimony and has

3   not demonstrated that she can present any admissible evidence of the allegedly

4   defamatory statement at trial, her defamation and slander per se claims arising out of the

5   "partner" statement cannot survive Defendant's motion for summary judgment.

6         Furthermore, even if Plaintiff could provide admissible evidence of Rothschild's

7   alleged statement, the "partner" statement still would not give rise to a viable defamation

8   claim because the statement does not have a defamatory meaning.  Under California law,

9   "[a] claim for defamation requires proof of a false and unprivileged publication that

10  exposes the plaintiff 'to hatred, contempt, ridicule, or obloquy, or which causes him to be

11  shunned or avoided, or which has a tendency to injure him in his occupation.'"

12  McGarry v. Univ. of San Diego, 154 Cal. App. 4th 97, 112 (2007).  The Court fails to see

13  how a statement that Plaintiff has become a partner at Peaches could cause Plaintiff to

14  suffer any of those negative effects.  According to Plaintiff's deposition testimony, Jim

15  Case actually congratulated her on being promoted to a partner, (see Shorter Dep.

16  105:18-25), which emphasizes that the statement, even if made by Peaches, was a

17  positive one and, as such, is not actionable as defamation.  Accordingly, Plaintiff's

18  defamation claims arising of this statement fail as a matter of law.

19        Finally, Plaintiff's defamation and slander per se claims based on the "partner"

20  statement are time-barred.  Under California law, defamation claims are subject to a one-

21  year statute of limitations.  Cal. Code Civ. Proc. § 340(c).  Generally, a cause of action for

22  defamation accrues at the time the defamatory statement is "published," that is "when the

23  defendant communicates the defamatory statement to a person other than the person

24  being defamed."  Shively v. Bozanich, 31 Cal.4th 1230, 1247 (2003).  Accordingly, "the

25  cause of action accrues and the period of limitations commences, regardless of when the

26  plaintiff secured a copy or became aware of the publication."  Id. at 1245-46.

27  ///

28  ///

1   However, in some cases, the accrual of a cause of action may be "delayed until the

2   plaintiff discovered (or reasonably should have discovered or suspected) the factual basis

3   for his or her claim." Id. at 1248.  In defamation context, the discovery rule applies "in

4   limited circumstances when the defamatory statement is made in secret or is inherently

5   undiscoverable." Id. at 1237.

6         According to Plaintiff's deposition testimony, she found out about the "partner"

7   statement while working at Peaches' booth at the PAA show in New Orleans when she

8   was still employed by Defendant.  (Shorter Dep. 103:18-23.)  Because Plaintiff was

9   terminated on May 29, 2008, the statement was necessarily made and brought to

10   Plaintiff's attention more than a year prior to Plaintiff filing the instant lawsuit in May 2010.

11   Therefore, Plaintiff's defamation and slander per se claims arising out of the "partner"

12   statement fail as time-barred.

13

14                    **2.        Statement that Plaintiff Signed a Non-Compete Agreement**

15

16         According to Plaintiff's deposition testimony, several times throughout Plaintiff's

17   employment at Peaches, Rothschild falsely told other Peaches' employees that Plaintiff

18   could not leave Peaches because she had signed a non-compete agreement with the

19   company.  (Shorter Dep. 113:12-16; 117:15-23.)  On one occasion, in 2007, Rothschild

20   allegedly stated that Plaintiff signed a non-compete agreement when she was drunk.  (Id.

21   113:15-121.)

22         The statement that Plaintiff signed a non-compete agreement is not defamatory

23   because it does not lower Plaintiff's personal or professional reputation.

24   Agreements not to compete with one's employer are common in modern business

25   practice and do not expose an employee signing such an agreement to "hatred,

26   contempt, ridicule, or obloquy." See McGarry v. University of San Diego, 154 Cal. App.

27   97, 112 (2007).

28   ///

1    As to Rothschild's statement that Plaintiff was drunk when she signed a

2  non-compete agreement with Peaches, Plaintiff herself testified that Rothschild made this

3  statement "kiddingly" and that Plaintiff knew that Rothschild was "joking" about it.

4  (Shorter Dep. 113:12-21, 114:2-4.)  Under California law, "satirical, hyperbolic,

5  imaginative, or figurative statements are protected because 'the context and tenor of the

6  statements negate the impression that the author seriously is maintaining an assertion of

7  actual fact." Franklin v. Dynamic Details, Inc., 116 Cal. App. 4th 375, 385 (2004).  To

8  constitute slander, "the words spoken must be understood by those who heard them

9  uttered in a slanderous sense." Martin v. Sutter, 60 Cal. App. 8, 13 (1922); see also

10  Ringler Assocs. Inc., 80 Cal. App. 4th at 1179 (explaining that a statement qualifies as

11  defamatory only if a recipient of the statement "understands both the defamatory meaning

12  of the statement and its application to the person to whom reference is made").  "Indeed,

13  if the third party hearing the statement does not understand the statement to be

14  defamatory and the statement does not affect his view of the plaintiff, then the plaintiff

15  suffers no damages as a result." Duste v. Chevron Products Co., 2012 WL 43756, at *6

16  (N.D. Cal. Jan. 9, 2012).

17    Here, as Plaintiff testified at her deposition, she did not understand the statement

18  as defamatory when it was made and other employees present in the room at the time

19  "knew that [Plaintiff] would not be drunk." (Shorter Dep. 114:3-4, 114:17-22.)  Because

20  neither Plaintiff nor any third party who heard the statement understood it to be

21  defamatory, the statement that Plaintiff was drunk when she signed a non-compete

22  agreement does not constitute defamation.

23    Finally, Plaintiff's defamation and slander per se claims based on Rothschild's

24  statement that Plaintiff signed a non-compete agreement are time-barred.

25  According to Plaintiff, Rothschild told the third parties about Plaintiff having a non-

26  compete agreement with Peaches "several times throughout my 20 years [at Peaches]."

27  (Shorter Dep. 117:20-23.)

28  ///

1  Because Plaintiff was terminated on May 29, 2008, the statements were necessarily

2  made more than a year before Plaintiff filed the instant lawsuit.  Accordingly, Plaintiff's

3  claims arising out of those statements fail as a matter of law.[8]  See Cal. Code Civ. Proc.

4  § 340(c).

5

6          **3.      Statement that Plaintiff was the Cause of Peaches' Revenue
                      Loss**
7

8          According to Plaintiff, "around fall of 2008," Rothschild told a group of Peaches'

9  employees that Plaintiff was the cause of Peaches losing revenue.  (Shorter Dep.

10 90:11-18; 92:24-93:3.)  Also, in October 2008, at the URA show in Reno, Plaintiff was

11 informed by an unidentified customer that Rothschild was "not saying nice things about

12 [Plaintiff]."  (Shorter Dep. 97:1-98:24.)  Plaintiff concedes that she did not hear Rothschild

13 making any of the alleged statements but asserts that she "heard it from other people."

14 (Shorter Dep. 93:4-10; 96:21-97:17; 97:7-99:7.)

15         As the Court explained earlier, an "affidavit or declaration used to support or

16 oppose a motion [for summary judgment] must be made on personal knowledge, set out

17 facts that would be admissible in evidence, and show that the affiant or declarant is

18 competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).  Here, Plaintiff has

19 provided no admissible evidence demonstrating that Rothschild or another Peaches'

20 representative actually told a third party that Plaintiff was the cause of Peaches' revenue

21 loss.  Plaintiff did not hear the statements personally and has not presented any

22 declarations or affidavits from people who did hear Rothschild make the alleged

23 statements.

24 ///

25 _____

26        [8] Plaintiff also stated, during her deposition, that Mike Lakhani from Pacific Apparel told her in
   February-March of 2012, "I heard you had a noncompete."  (Shorter Dep. 115:10-116:2.)  However, Plaintiff
27 has not presented any evidence demonstrating who made that statement to Lakhani.  In fact, Plaintiff never
   even asked Lakhani where he might have heard about Plaintiff signing the non-compete agreement.  Thus,
28 even if the statement about Plaintiff signing a non-compete agreement was actionable as defamation,
   Plaintiff has no evidence allowing the Court to attribute the 2012 statement to Peaches.

1  Plaintiff's evidence submitted in support of her defamation claims is limited to her own

2  inadequate assertions to that effect and is thus clearly insufficient to withstand

3  Defendant's motions for summary judgment.  See Courtney v. Canyon Television &

4  Appliance Rental Inc., 899 F.2d 845, 851 (9th Cir. 1990).

5        Finally, because the alleged statements were made by Rothschild "around the fall

6  of 2008,"[9] and Plaintiff found out about them within "a few days or weeks," (see Shorter

7  Dep. 90:11-18; 95:6-11), the statute of limitations with respect to these defamatory

8  statements ran prior to Plaintiff filing the instant lawsuit.  See Cal. Code Civ. Proc.

9  § 340(c).

10

11            **4.**        **Statement that Plaintiff did not Get Along with Other Employees**

12

13        The final allegedly defamatory statement on which Plaintiff bases her defamation

14  claims is that Plaintiff did not get along with other employees.  (Shorter Dep. 118:17-22.)

15  First, Plaintiff has failed to identify any discernible defamatory statement that could be

16  attributed to Peaches.  The source of Plaintiff's knowledge about Rothschild's alleged

17  statement is a conversation Plaintiff had with several executives of Peaches competitor,

18  Dickies, during Plaintiff's job interview in July 2008.  (Id. 118:25-120:10.)  According to

19  Plaintiff, one of Dickies' executives told Plaintiff, "When you come into the company, you

20  need to make sure you get along with everybody."  (Id. 119:12-14.)  Thus, according to

21  Plaintiff, Dickies' executive "must have heard something from Peaches" about Plaintiff not

22  getting along with her fellow employees.  (Id. 121:2-5.)

23  _____

24       [9] In her deposition testimony, Plaintiff also stated that Rothschild made statements blaming Plaintiff
for being the cause of Peaches' revenue loss at a show in Las Vegas in 2009.  (Shorter Dep. 102:8-11.)

25  However, Plaintiff cannot identify the content of Rothschild's alleged statements or to whom the statement
was communicated.  All she knows is that Rothschild was still saying some "negative" things about her.  (Id.

26  102:8-24.)  Instead of producing evidence to support her defamation claim, Plaintiff argues that she "has
been precluded from obtaining essential discovery . . . in that she could not take the deposition of Deena

27  Chacon-Jerotz prior to the opposition of the instant motion."  (ECF No. 56, at 11.)  Plaintiff goes on arguing
that she should be allowed to reopen discovery because denying her the opportunity to depose Chacon-
Jerotz would prejudice her.  (Id. at 11-12.)  The Court considered and rejected this argument when it ruled

28  on Plaintiff's motion to modify the pretrial scheduling order.  (See ECF No. 57.)

1  Additionally, Plaintiff states that, in August 2009, she had a conversation with the

2  president of Strategic Partners, Mike Singer, and told him, "I understand people are

3  saying negative things about me." (Id. 123:7-22.) Mr. Singer did not deny it, but instead

4  "kind of chuckled" and then said, "Well, your record stands for itself." (Id. 124:25-125:6.)

5  Thus, Plaintiff's evidence in support of her defamation claim here is limited to Plaintiff's

6  own speculative, unsupported ideas about someone at Peaches spreading rumors about

7  Plaintiff's inability to get along with her fellow employees.  Plaintiff does not know who

8  made the alleged statement, in what context or for what purpose the statement was

9  made, or who the recipient of the statement was.  Such evidence – or, stated more

10  accurately, total lack of evidence – is insufficient to withstand Defendant's motion for

11  summary judgment.

12       Additionally, even were Plaintiff to present evidence of Rothschild or another

13  Peaches employee making a statement about Plaintiff's inability to get along with other

14  employees, such a statement would not be actionable because it is an opinion.  Because

15  "there is no such thing as a false idea," Gertz v. Robert Welch, Inc., 418 U.S. 323, 339

16  (1974), publications which are statements of opinion cannot give rise to a viable

17  defamation claim.  See Hawran v. Hixson, 209 Cal. App. 4th 256, 289 (Cal. App. 2012)

18  ("[A] viable defamation claim requires the existence of a provable falsehood."); Fletcher v.

19  San Jose Mercury News, 216 Cal. App. 3d 172, 191 (1989) (stating that "broad,

20  unfocused and wholly subjective" comments constitute non-actionable opinions).  An

21  opinion "is actionable only if it could reasonably be understood as declaring or implying

22  actual facts capable of being proved true or false." Ruiz v. Harbor View Community

23  Assn., 134 Cal. App. 4th 1456, 1471 (2005) (internal citation omitted).  Whether a

24  challenged statement constitutes a fact or non-actionable opinion is a question of law for

25  the court to decide. Hawran, 209 Cal. App. 4th at 290.

26  ///

27  ///

28  ///

1    Defendant's alleged statement that Plaintiff did not get along with other employees

2    is a subjective opinion regarding Plaintiff's ability to interact with her fellow employees,

3    which is not subject to ready verification.  As such, it is not actionable as defamation.

4    See Hunley v. Orbital Sciences Corp., 2006 WL 2460631, at *3 (D. Ariz. Aug. 22, 2006)

5    (concluding that the statement describing the plaintiff as a person unable to work with

6    management and outside customers was a "mere opinion regarding Plaintiff's ability to

7    interact with others at work"); Naeemullah v. Citicorp Servs., Inc., 78 F. Supp. 2d 783,

8    793 (N.D.Ill.1999) (holding that the defendant's statements that the plaintiff had "poor

9    interpersonal skills and run-of-the-mill professional abilities" were "nonactionable

10   statements of subjective opinion"); Schibursky v. IBM, 820 F. Supp. 1169, 1182 (D.

11   Minn.1993) ("The court holds that, as a matter of law, the alleged statements that

12   [plaintiff] is 'hard to work with' and 'rude' are not actionable."); Mangan v. Corporate

13   Synergies Group, Inc., 834 F. Supp. 2d 199, 205 (D.N.J. 2011) (concluding that the

14   statements that the defendant "had lost faith in Plaintiff's leadership ability and his

15   management stills" and that Plaintiff "had left [defendant] because he was not performing

16   his job" were "rooted in underlying opinion statements" not actionable as defamation).

17   Finally, as with the other three statements on which Plaintiff bases her defamation

18   claims against Peaches, Rothschild's statement about Plaintiff not getting along with her

19   fellow employees was made more than a year before Plaintiff filed the instant lawsuit and

20   is thus time-barred.[10]  See Cal. Code Civ. Proc. § 340(c).

21   Based on the foregoing, no triable issue of fact exists on Plaintiff's defamation and

22   slander per se claims, and thus summary judgment for Defendant is proper.

23   ///

24   ///

25   ///

26   ///

27

28   [10] As Plaintiff testified during her deposition, she found out about Rothschild making this statement during her July 15, 2008 job interview with H.P. Park.  (Shorter Dep. 119:9-120:10.)

1

**CONCLUSION**

2

3       For the reasons discussed above, the Court concludes that there exists no

4   genuine issue as to any material fact, and that Defendant is entitled to judgment in its

5   favor on all of Plaintiff's claims.  Accordingly, it is hereby ordered that:

6       1. Defendant's motion for summary judgment (ECF No. 42) is GRANTED; and

7       2. The Clerk of the Court is DIRECTED to enter judgment for Defendant Peaches

8   Uniforms, Inc. and to close this case.

9       IT IS SO ORDERED.

10

11  Dated:  January 22, 2013

12                                         _____
                                           MORRISON C. ENGLAND, JR., CHIEF JUDGE
13                                         UNITED STATES DISTRICT COURT

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28